# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Paul E. Plunkett | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 3056 | **DATE** | 1/6/2004 |
| **CASE TITLE** | GERALD CHAPALA vs. HOFFMAN ESTATES POLICE DEPT., et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: there is no genuine issue of material fact on the federal claims plaintiff asserts against defendants in Count I and II of the complaint. Defendants' motion for summary judgment on those claims is, therefore, granted. The Court declines to exercise its supplemental jurisdiction over plaintiff's state-law claims, which are dismissed without prejudice to refiling in state court. This is a final and appealable order. Ruling date of 1/21/04 is stricken.

(11) ■ [For further detail see order attached to the original minute order.]

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| GERALD CHAPALA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 02 C 3056 |
| ) | Paul E. Plunkett, Senior Judge |
| HOFFMAN ESTATES POLICE ) | |
| DEPARTMENT, et al., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Gerald Chapala has sued Hoffman Estates and various of its officials for their alleged violations of his federal constitutional rights and state law. The case is before the Court on defendants' Federal Rule of Civil Procedure ("Rule") 56(c) motion for summary judgment. For the reasons set forth below, the motion is granted as to the federal claims and the Court declines to exercise supplemental jurisdiction over the state-law claims.

## Facts[1]

On September 24, 2001, plaintiff was employed as a patrol officer by the Hoffman Estates Police Department. (Defs.' LR 56.1(a)(3) Stmt. ¶¶ 1, 5.) At the end of his shift, sometime between 11:00 p.m. and midnight, plaintiff encountered defendant Caceres in the locker room. (Id. ¶ 5.) Plaintiff says that Caceres repeatedly taunted him saying, "Gerry, Gerry, your shotgun is talking to

---

[1] Plaintiff did not file a response to defendants' LR 56.1(a)(3) statement of uncontested facts. Thus, he is deemed to have admitted all of them. See LR 56.1(b)(3)(B).

you." (Id. ¶ 6.) Caceres denies that he taunted plaintiff. Instead, he says, plaintiff was agitated when Caceres arrived in the locker room and attacked Caceres without provocation while making statements like "the end is near" and "the Giant is coming." (Id. ¶ 7.)

Immediately afterwards, Caceres reported the incident to Lieutenant Hish. (Id. ¶ 16.) Hish, in turn, called defendant Richardson at home to relay the story. (Id.) The next morning, Richardson told defendant Herdegen, the Chief of Police, what had happened. (Id. ¶ 17.) Herdegen then scheduled a meeting with the Village Manager, the Village Attorney and defendant Jones, Director of the Village Department of Health and Human Services, to discuss the situation. (Id. ¶ 18.) The three decided to place plaintiff on paid administrative leave pending his completion of a fitness for duty evaluation. (Id. ¶ 19.)

When Herdegen called to schedule the fitness evaluation, he discussed the proposed plan of action with Dr. Selvig. (Id. ¶¶ 20-21.) Selvig suggested that plaintiff be stripped of his weapons before speaking with Herdegen and that he be taken to an emergency room for an evaluation. (Id. ¶¶ 22-23.)

Herdegen told defendant Paez to meet plaintiff at the department's entrance and take his weapons. (Id. ¶ 27.) Paez met plaintiff and told him that Herdegen wanted to speak with him about the events of the previous night. (Id. ¶¶ 28-30.) Paez asked plaintiff for his off-duty weapon and plaintiff surrendered to him a gun known as a K-40. (Id. ¶ 31.) Unbeknownst to Paez, plaintiff also had high-powered, 9mm, semi-automatic pistol concealed in his waistband, which he did not surrender. (Id. ¶¶ 32-33.) The Department had not authorized plaintiff to carry that weapon. (Id. ¶ 33.)

Plaintiff then went to Herdegen's office where he met with Herdegen and Richardson. (Id. ¶ 34.) Herdegen told plaintiff that they were launching an investigation into the incident that occurred the previous evening and that he was being placed on administrative leave. (Id. ¶¶ 38-39.) Herdegen also asked plaintiff to go to the hospital for an evaluation, a request which plaintiff refused. (Id. ¶ 43.) Herdegen asked plaintiff to reconsider, and told him he would order to plaintiff to go, if necessary, and discipline plaintiff if he refused to obey the order. (Id. ¶ 44.)

At that point, plaintiff asked to speak to a lawyer. (Id. ¶ 45.) After doing so, plaintiff told Herdegen that, though he did not agree to go to the hospital, he would do so cooperatively. (Id.)

Herdegen, Richardson and plaintiff went to the hospital together. (Id. ¶ 47.) At the hospital, plaintiff surrendered the concealed semi-automatic weapon to Herdegen. (Id. ¶¶ 49-50.)

Upon their arrival, a caseworker named Maria interviewed plaintiff. When she finished, she told Herdegen that plaintiff should be signed into the hospital. (Id. ¶¶ 55-57.) When Herdegen expressed surprise, Maria said that she thought committing plaintiff was the appropriate thing to do, given the previous evening's incident and the comments plaintiff made during his interview with her. (Id. ¶¶ 58-60.)

At about the same time, Paez called Richardson at the hospital. (Id. ¶ 62.) Paez told Richardson that he had found five magazines, each with a thirty-round capacity, and 145 rounds of bullets commonly used in an AK-47 assault rifle in a backpack plaintiff had left in Paez's office. (Id. ¶¶ 64-65.) Richardson reported Paez's discovery to Herdegen. (Id. ¶ 66.) Based on all of the information he had received, Herdegen decided to sign the petition to commit plaintiff. (Id. ¶¶ 70-71, 77.)

The physician who examined plaintiff in connection with the petition was Dr. Giacomin. (Id. ¶ 84.) Given the description of the precipitating incident and his own examination of plaintiff, during which plaintiff evaded his questions and made repeated statements that the doctor characterized as paranoid, Dr. Giacomin felt that plaintiff needed to be hospitalized for an evaluation. (Id. ¶¶ 85-90.) After Giacomin examined plaintiff, he concluded that plaintiff was mentally ill and in danger of harming himself or others. (Id. ¶ 93.)

Ultimately, plaintiff was committed to Alexian Brothers Mental Health Center on September 25, 2001, where he stayed until October 1, 2001. (Id. ¶¶ 4, 96, 108.)

On March 18, 2002, Herdegen filed charges against plaintiff with the Hoffman Estates Board of Fire and Police Commissioners. Among other things, Herdegen charged that plaintiff's conduct on September 24, 2001 constituted a battery against Caceres and violated departmental rules and regulations. (Id. ¶ 8.) On June 24, 2002, after a six-day hearing, the Board sustained Herdegen's charges. (Id., Ex. D, Findings & Decision.) In addition, the Board found that plaintiff was unfit for duty and dismissed him from his position as patrol officer. (Id.)

Plaintiff sought review of the Board's decision in state court, which upheld the Board's decision. (Id. ¶¶ 13-14.) Plaintiff has now filed a complaint with this Court alleging that defendants' actions violated his federal constitutional rights and various provisions of state law.

## The Legal Standard

To prevail on a summary judgment motion, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, [must] show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law." Fed. R. Civ. P. 56(c). At this stage, we do not weigh evidence or determine the truth of the matters asserted. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). We view all evidence and draw all inferences in favor of the non-moving party. Michas v. Health Cost Controls of Ill., 209 F.3d 687, 692 (7th Cir. 2000). Summary judgment is appropriate only when the record as a whole establishes that no reasonable jury could find for the non-moving party. Id.

## Discussion

### The Federal Claims

In the first two counts of his complaint, plaintiff alleges that defendant violated his Fourth and Fourteenth Amendment rights when they had him involuntarily committed. The latter claims are easily dispatched. Involuntary commitment is a seizure, governmental action that falls directly under the Fourth Amendment. Villanova v. Abrams, 972 F.2d 792, 795 (7th Cir. 1992). Consequently, plaintiff's challenge to his commitment "must be analyzed under the [Fourth Amendment] standard . . . , not under the rubric of substantive due process." United States v. Lanier, 520 U.S. 259, 272 n.7 (1997).[2] Thus, defendants are entitled to judgment as a matter of law on the Fourteenth Amendment claims asserted in Count II.

That leaves the Fourth Amendment claims. Defendants says that these claims were, in essence, adjudicated against plaintiff in the state administrative review proceeding. Thus, they say, the state-law doctrines of claim and/or issue preclusion bar their relitigation in this suit. Determining whether plaintiff's claims are precluded requires the resolution of a number of thorny questions about, for example, the limitations of privity. See Licari v. City of Chicago, 298 F.3d 664, 666 (7th

---

[2]Plaintiff does not challenge the commitment procedures themselves.

-5-

Cir. 2002) (setting forth elements of claim preclusion under Illinois law); Talarico v. Dunlap, 667 N.E.2d 570, 572 (Ill. App. Ct.) (setting forth elements of issues preclusion under Illinois law), aff'd, 168 Ill.2d 627 (1996). Fortunately, we need not decide those questions because, even if neither preclusion doctrine applies, plaintiff's claims fail on the merits.

As an initial matter, the Fourth Amendment claims that plaintiff asserts against the Village of Hoffman Estates must be dismissed.[3] To prevail on a section 1983 claim against the Village, plaintiff must show that he was deprived of his constitutional rights pursuant to one of its policies, customs or practices. Monell v. Department of Soc. Servs. of City of New York, 436 U.S. 658, 694 (1978). Plaintiff has proffered no evidence to suggest that his involuntary commitment was accomplished pursuant to Village policy. The Village is, therefore, entitled to judgment as a matter of law on the Fourth Amendment claim plaintiff asserts against it.

The Fourth Amendment claims plaintiff asserts against the individual defendants suffer the same fate. The individual defendants violated plaintiff's Fourth Amendment rights if they had him committed without probable cause to believe that he was an immediate danger to himself or others. Villanova, 972 F.2d at 795 (7th Cir. 1992) ("A civil commitment . . . may be made only upon probable cause, that is, only if there are reasonable grounds for believing that the person seized is subject to seizure under the governing legal standard. . . ."); 405 ILL. COMP. STAT. 5/3-601 (a person can be involuntarily committed only if he is mentally ill and "immediate hospitalization is necessary for the protection of such person or others from physical harm"). Probable cause is a "practical, nontechnical conception" that requires an "evaluation of the totality of the circumstances." United

---

[3] As plaintiff acknowledges in his complaint, the Hoffman Estates Police Department is a "public service provided by the Village of Hoffman Estates," not a separate legal entity. (Compl. ¶ 2.)

States v. Rucker, 138 F.3d 697, 700 (7th Cir. 1998) (internal quotation marks and citations omitted). Defendants had probable cause to commit plaintiff if, "at the moment the decision [was] made, the facts and circumstances within [their] knowledge and of which [they had] reasonably trustworthy information would warrant a prudent person in believing" that plaintiff met the standard for commitment. Qian v. Kautz, 168 F.3d 949, 953 (7th Cir. 1999).

The undisputed facts establish that defendants had probable cause to believe that plaintiff was mentally ill and was a danger to himself or others when they had him committed. Herdegen and Richardson had received a report from Caceres, whom they had no reason to disbelieve, that plaintiff had assaulted Caceres in the locker room, while making nonsensical comments like "the Giant is coming." (Defs.' LR 56.1(a)(3) Stmt. ¶¶ 7, 16-18, 25-26); Gramenos v. Jewel Cos., Inc., 797 F.2d 432, 439 (7th Cir. 1986) ("When an officer has received his information from some person – normally the putative victim or an eye witness – who it seems reasonable to believe is telling the truth, he has probable cause.") (internal quotation marks and citation omitted). They also knew that plaintiff had carried a concealed and unauthorized weapon into the meeting he had the following day with Herdegen and Richardson and told the two men that other members of the Department were plotting against him. (Id. ¶¶ 32-37, 49-50, 53.) Further, they knew that Paez had found 145 rounds of bullets commonly used in an AK-47 assault rifle, another weapon that plaintiff had no authority to carry, in plaintiff's backpack. (Id. ¶¶ 62-66, 73.) They also knew that the case worker at the emergency room and defendant Jones, both medical professionals, recommended that plaintiff be committed. (Id. ¶¶ 55-60, 70.) Finally, Herdegen knew that plaintiff was recently alleged to have made several inappropriate comments to citizens, including, "I could blow you away tonight and not lose a wink of sleep over it" and "Shut up or I'm gonna smoke you right here." (Id. ¶¶ 78-81.)

Given those undisputed facts, defendants had probable cause to have plaintiff involuntarily committed.

Moreover, even if defendants did not have probable cause for the commitment, they would still be shielded from plaintiff's Fourth Amendment claims by qualified immunity. Qualified immunity would protect defendants if a reasonable officer in their position could have believed there was probable cause for the commitment. Wollin v. Gondert, 192 F.3d 616, 622 (7th Cir. 1999) (internal quotation marks and citation omitted). Faced with the undisputed facts set forth above, a reasonable police officer could easily have believed that plaintiff was mentally ill and a danger to himself or others. Consequently, defendants would be qualifiedly immune from liability on plaintiff's Fourth Amendment claims, even if they did not have probable cause to commit him. Defendants' motion for summary judgment on the claims asserted in Count I is, therefore, granted.

## The State Law Claims

Having dismissed the only federal claims in this suit, the Court declines to exercise its supplemental jurisdiction over plaintiff's state-law claims. 28 U.S.C. § 1367(c)(3).

## Conclusion

For the reasons stated above there is no genuine issue of material fact on the federal claims plaintiff asserts against defendants in Counts I and II of the complaint. Defendants' motion for summary judgment on those claims is, therefore, granted. The Court declines to exercise its supplemental jurisdiction over plaintiff's state-law claims, which are dismissed without prejudice to refiling in state court. This is a final and appealable order.

ENTER:

UNITED STATES DISTRICT JUDGE

DATED: January 6, 2004